IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT STEWART, | : | |
| --- | --- | --- |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| OFFICER ROBERT KINCH, et al., | : | |
| Defendants. | : | NO. 12-1509 |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                                           DECEMBER 20, 2012

Plaintiff Robert Stewart has filed a wide-ranging complaint against various public and private entities and individuals based on their conduct during his arrest and pretrial detention. The named defendants responded to Mr. Stewart's complaint by filing three motions to dismiss. For the following reasons, the Court grants the partial motion to dismiss of Defendant PrimaCare Medical, Inc. and its nurses, and grants in part and denies in part the remaining motions to dismiss.

I.       **Factual Background and Procedural History**

        A.         **Factual Allegations**

In his complaint, Mr. Stewart alleges that he was talking with landscaping workers at his apartment complex in West Chester, Pennsylvania on March 25, 2010, when one of those crew members approached and assaulted him. Mr. Stewart managed to escape this anonymous assailant and began to run back to his apartment. However, Mr. Stewart was intercepted en route to his apartment by Officer Robert Kinch and Officer Armbruster of the Westtown East Goshen Police Department. These officers allegedly tackled Mr. Stewart, handcuffed him, and tasered him in the back. After the tasering, Officer Armbruster stated: "I'll take off my hat and fight you a******, I'm a MMA fighter." Police then took Mr. Stewart into custody and transferred him to

1

a police station, where he was booked on charges of aggravated assault, harassment, resisting arrest, disorderly conduct, and public drunkenness. Mr. Stewart alleges that he was detained in a cell at the station for "several hours."

Following this period of detention, Mr. Stewart was allegedly transferred to Chester County Hospital and diagnosed with contusions and abrasions on his face, neck, back, and abdomen. After spending three hours at the hospital, Mr. Stewart was transported to the Chester County Prison, where he informed prison intake officials that he was bipolar and had a previous hospitalization at a mental institution. Mr. Stewart alleges that prison employees deliberately ignored this information and denied him appropriate medical attention.

The next day, Mr. Stewart alleges that a nurse named Cornadeneen Blakely questioned him about his mental health history, and noted that he was previously hospitalized for psychiatric issues and was being treated for schizophrenia. That same day, another nurse, Christopher Ladzinski, also allegedly noticed that Mr. Stewart had a history of schizophrenia and requested a mental health appointment for him. On March 28, a third nurse, Cheryl Boyd, noted that Mr. Stewart had a history of treatment for schizophrenia. Mr. Stewart alleges that all of these nurses worked for PrimeCare Medical, a corporation based in Harrisburg, Pennsylvania.

Mr. Stewart next alleges that on March 28, 2010, he was inside his cell, complaining about hearing voices and having breathing difficulties, when he suffered a "psychotic episode." Two prison guards, Correctional Officers Emmons and Whiteside, responded to this episode by entering Mr. Stewart's cell and assaulting him. Mr. Stewart was then placed in restraints, but continued to complain to unspecified prison guards that he was suffering from breathing difficulties, hearing voices, and insomnia.

On March 29, 2010, Mr. Stewart was allegedly put into a straightjacket, "injected with an unknown drug," and placed into another general population cell. Mr. Stewart then had another "psychotic episode" in which he fell off a bunk bed and struck his head on a metal toilet. Prison guards subsequently found Mr. Stewart lying on his back in his cell, surrounded by a pool of blood. Mr. Stewart was transported to Christina Hospital and diagnosed with severe injuries, including a form of quadriplegia.

### B. Summary of Complaint

Mr. Stewart's complaint brings 17 counts against at least 17 defendants. Broadly speaking, Counts 1-7 pertain to Mr. Stewart's arrest, Counts 8-16 pertain to his detention at Chester County Prison, and Count 17 centers on the treatment he received from PrimaCare Medical and its nurses. More specifically, the counts charged in the complaint are as follows:

- Counts 1-3 of the complaint respectively allege that Officers Kinch and Armbruster, along with other John Doe police officers, violated Mr. Stewart's Fourth Amendment rights and falsely arrested and imprisoned Mr. Stewart.[1]

- Count 4 alleges that East Goshen and Westtown Townships are liable for failing to train and supervise their police officers.

- Count 5 seeks to hold Officers Kinch and Armbruster liable for assault and battery.

- Counts 6-7 respectively allege malicious prosecution and intentional infliction of emotional distress against Officers Kinch and Armbruster and East Goshen and Westtown Townships.

- Counts 8 and 12 seek to hold Correctional Officers Emmons, Whiteside, Kelly, Brooks, Yancik, Griswold, and Moeller, as well as John Doe correctional officers, liable for violating Mr. Stewart's rights under the Eighth Amendment.[2]

---

[1] Mr. Stewart has chosen to voluntarily dismiss East Goshen Township and Westtown Township as defendants with respect to Counts 1-3 of his complaint. *See* Docket No. 19 at 1-2.
[2] Mr. Stewart has voluntarily dismissed Chester County and Chester County Prison as defendants in Count 8. *See* Docket No. 19 at 3.

3

- Count 9 alleges that Chester County and Chester County Prison are liable for failure to train and supervise prison guards.

- Count 10 alleges that Correctional Officers Emmons and Whiteside are liable for assault and battery.

- Counts 11 and 15 allege that Correctional Officers Emmons, Whiteside, Kelly, Brooks, Yancik, Griswold, and Moeller, as well as John Doe correctional officers, Chester County, and Chester County Prison, are liable for intentional infliction of emotional distress.

- Count 13 seeks to hold Chester County and Chester County Prison liable for violating Mr. Stewart's rights under the Eighth Amendment.

- Count 14 alleges that the above-mentioned prison employees and county-level entities are liable for "willful misconduct."

- Count 16 alleges that PrimeCare Medical, Nurses Boyd, Blakely, and Ladzinski, Correctional Officers Emmons, Whiteside, Kelly, Brooks, Yancik, Griswold, and Moeller, John Doe correctional officers, Chester County, and Chester County Prison "conspired among themselves to deprive the plaintiff of his state and constitutional rights."

- Finally, Count 17 alleges that PrimeCare Medical and its nurses were negligent in treating Mr. Stewart.

**C.  Procedural History**

On April 20, 2012, Officers Kinch and Armbruster, East Goshen Township, and Westtown Township (the "Township Defendants") filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The motion seeks to dismiss Counts 1, 3, 4, 6, and 7 of the complaint as to all named Township Defendants, as well as Count 2 with regards to East Goshen and Westtown Townships.  Additionally, Correctional Officers Emmons, Whiteside, Kelly, Brooks, Yanik, Griswold, and Moeller, Chester County, and Chester County Prison (the "County Defendants") filed a motion to dismiss the claims against them in Counts 8-16 of the complaint.  Finally, on April 30, 2012, Nurses Blakely, Ladzinski, and Boyd and PrimaCare

4

Medical (the "PrimaCare Defendants") filed a partial motion to dismiss Count 16 of Mr. Stewart's complaint.

On May 23, 2012, Mr. Stewart filed responses to the foregoing three motions to dismiss. The Court subsequently ordered Mr. Stewart to file a supplemental brief in support of his responses, and allowed the Township Defendants, County Defendants, and PrimaCare Defendants to respond to Mr. Stewart's briefing. Having received and reviewed the briefs of the respective parties, the Court will now rule on the pending motions.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others

to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Concomitantly, the Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

## III. Discussion

### A. The Township Defendants' Motion to Dismiss

1. *Counts One and Three*

In their current form,[3] Counts 1 and 3 of the complaint allege that Officers Kinch and Armbruster violated Mr. Stewart's Fourth Amendment rights. The "[u]se of excessive force by a state official effectuating a search or seizure violates the Fourth Amendment." *Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005). A plaintiff may "state a claim for excessive force as an unreasonable seizure under the Fourth Amendment . . . [by] show[ing] that a seizure occurred and that it was unreasonable." *Id.* (citations and quotations omitted). Here, Mr. Stewart's complaint clearly alleges that a seizure occurred when Officers Kinch and Armbruster arrested him. Moreover, Mr. Stewart alleges that he was merely attempting to peacefully escape from an unprovoked assault when these officers tackled him, forced his head into the ground, and handcuffed and tasered him. Accepting these allegations as true, the Court finds that Mr. Stewart has sufficiently pleaded his claim. *See Ansell v. Ross Twp.*, 419 F. App'x 209, 213 (3d Cir. 2011) (denying a motion to dismiss a Fourth Amendment claim against deputy sheriffs who allegedly arrested a sleeping plaintiff by dragging him out of bed, pointing guns at him, and slamming him into a wall). Therefore, the Court denies the Township Defendants' motion to dismiss Counts 1 and 3 of the complaint with respect to Officers Kinch and Armbruster.

2. *Count Four*

Count 4 of Mr. Stewart's complaint seeks to hold East Goshen and Westtown Townships liable for failing to properly train and supervise Officers Kinch and Armbruster. In his supplemental brief, Mr. Stewart clarifies that this claim arises under *Monell v. Department of*

---

[3] As stated above, Mr. Stewart has agreed to dismiss Counts 1-3 as to East Goshen and Westtown Townships.

7

*Social Services of New York*, 436 U.S. 658 (1978), which established that "[a] municipality may only be held liable under [section] 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind [the plaintiff's] injury." *See Jewell v. Ridley Twp.*, No. 11-4231, 2012 U.S. App. LEXIS 19644, at *6 (3d Cir. Sept. 18, 2012) (citing *Monell* 436 U.S. at 694). A plaintiff sufficiently pleads the existence of such a custom or policy by alleging (i) that a municipal entity failed to train or supervise its employees, (ii) that this failure amounted to "deliberate indifference" as to whether constitutional violations would occur, and (iii) that this failure "actually caused the [plaintiff's] injury." *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 144-45 (3d Cir. 1997).

In order to adequately state a failure-to-train claim against the Township Defendants, Mr. Stewart must first allege "the training offered to an employee was, in a relevant way, inadequate." *Abraham v. Digugleilmo*, No. 06-0058, 2010 U.S. Dist. LEXIS, at *20 (E.D. Pa. May 25, 2010). Here, Mr. Stewart alleges that East Goshen and Westtown Townships failed to discipline or train police officers who committed constitutional violations, and that these defendants failed to properly train police officers regarding the limits of their constitutional authority. In light of these allegations, Mr. Stewart has sufficiently alleged that the Township Defendants failed to adequately train their police officers.

Mr. Stewart's complaint also must plausibly suggest that the Township Defendants failed to train their employees due to "'deliberate indifference' [as] to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the

8

situation involves a difficult choice or a history of employee[] mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F.3d at 357; *see Doe v. Luzerne Cnty.*, 660 F.3d 169, 179-80 (3d Cir. 2011) (setting forth same test). Here, all three elements are met, as police officers must decide whether to use force in making an arrest, such a decision involves a difficult choice, and a wrong choice to use excessive force will frequently violate an arrestee's Fourth Amendment rights. *See Carter*, 181 F.3d at 357. Moreover, Mr. Stewart has pled that, prior to his arrest, other Westtown and East Goshen police officers engaged in misconduct by using excessive force during arrests. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (citations and quotations omitted); *see also Carter*, 181 F.3d at 357 (deliberate indifference can be shown through "a history of employee[] mishandling"). Therefore, Mr. Stewart has sufficiently pled the "deliberate indifference" element of his failure-to-train claim.

Finally, a failure-to-train claim requires Mr. Stewart to plead "that a deficiency in the [Township Defendants'] training program actually caused the alleged violation of [his] constitutional . . . right." *Luzerne Cnty.*, 660 F.3d at 180. Here, Mr. Stewart pleads that East Goshen and Westtown's failure to train or discipline police officers who committed constitutional violations encouraged Officers Kinch and Armbruster to use excessive force while arresting him. Mr. Stewart has thus sufficiently pled his failure-to-train claim, and the Court will not dismiss Count 4 of his complaint.

3. *Count Six*

In the sixth count of his complaint, Mr. Stewart attempts to state a claim against the Township Defendants for malicious prosecution. Under both section 1983 and Pennsylvania state law, a plaintiff cannot prevail on a claim of malicious prosecution unless he shows that a criminal proceeding instituted against him ended in his favor. *See Kossler v. Crisanti*, 564 F.3d 181, 186, 186 n.2 (3d Cir. 2009). Here, Mr. Stewart omits from his complaint any allegations regarding the outcome of the criminal proceedings arising from his arrest. Therefore, the Court will dismiss this count without prejudice as to all named defendants.

4. *Count Seven*

Count 7 of the complaint seeks to hold the Township Defendants liable for intentional infliction of emotional distress. "[I]n order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010). Additionally, the defendant's outrageous conduct must cause the plaintiff physical harm. *Id.*

Here, Mr. Stewart alleges that he suffered multiple contusions and abrasions as a result of his arrest and tasering. Moreover, the alleged use of a taser during an arrest after the arrestee has been secured gives rise to a plausible claim for intentional infliction of emotional distress. *See Garey v. Borough of Quakertown*, No. 12-799, 2012 U.S. Dist. LEXIS 117059, at *15-16 (E.D. Pa. Aug. 20, 2012) ("The use of Tasers by [the Defendants] after Plaintiff had already complied with the arrest and posed no threat to the officers or the public leads to an inference of sufficiently outrageous conduct to sustain a claim for intentional [infliction] of emotional distress at this stage of the litigation."). Therefore, the Court finds that Mr. Stewart has sufficiently

alleged an intentional infliction of emotional distress claim as to Officers Kinch and Armbruster. However, the Court will dismiss this count with prejudice as to East Goshen and Westtown Townships, because Pennsylvania law grants townships immunity from intentional tortious conduct. *See Robinson v. Darby Borough*, No. 08-4561, 2010 U.S. Dist. LEXIS 36347, at *4-6 (E.D. Pa. Apr. 13, 2010).

**B.     The County Defendants' Motion to Dismiss**

    1.     *Count Eight*

In Count 8 of his complaint, Mr. Stewart appears to allege that the individual County Defendants violated his Eighth Amendment[4] rights by taunting and assaulting him. Under the Eighth Amendment, the "pivotal inquiry" for an excessive force claim "is whether force was applied in a good-faith manner to maintain or restore discipline, or maliciously and sadistically to cause harm." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002). In answering this question, a district court's analysis "must be driven by the extent of the force and the circumstances in which it [was] applied[,] not [merely] by the resulting injuries" to a plaintiff. *Id.* at 648; *see also id.* at 649 (noting that, in addition to the extent of a plaintiff's injuries, courts must consider the "need for application of force" and the "relationship between the need and the amount of force that was used" in determining if a correctional officer violated the Eighth Amendment through use of excessive force). While the Third Circuit Court of Appeals recently declined to decide whether a pretrial detainee's claim regarding an alleged isolated incident of

---

[4] Although Counts 8, 12, and 13 allege that the County Defendants violated Mr. Stewart's Eighth Amendment rights, a pretrial detainee such as Mr. Stewart is protected by the Fourteenth Amendment's Due Process Clause, not by the Eighth Amendment. *See Carson v. Mulvihill*, No. 10-1470, 2012 U.S. App. LEXIS 14540, at *10 (3d Cir. July 16, 2012). However, the County Defendants do not move to dismiss these claims because Mr. Stewart has cited the wrong constitutional provision, and the Court will not do so *sua sponte* with respect to Count 8 given that Mr. Stewart pleads facts that adequately state a claim under the Fourteenth Amendment against Officers Emmons and Whiteside.

11

excessive force should be analyzed under the Eighth or Fourteenth Amendment, *see Carson*, 2012 U.S. App. LEXIS 14540 at *18, it did hold that, should the Fourteenth Amendment apply, it would provide pretrial detainees with *more* protection than the Eighth Amendment. *See id.* at *15, 18. Therefore, if Mr. Stewart pleads enough facts to sufficiently state an excessive force claim under the Eighth Amendment, then he also adequately pleads such a claim under the Fourteenth Amendment.

Here, Mr. Stewart alleges that Correctional Officers Emmons and Whiteside assaulted him inside his prison cell on March 28, 2010. Although Mr. Stewart does not allege that he suffered injuries as a result of this assault, he does allege that the assault occurred in the midst of a psychotic episode and that, instead of restraining him during this medical event, the officers chose to strike his head and body repeatedly. Such an allegation is sufficient to give rise to an Eighth (or Fourteenth) Amendment claim against Officers Emmons and Whiteside. *See Mensinger*, 293 F.3d 649-50 (denying correctional officers' motion for summary judgment because plaintiff alleged that the officers punched and kicked him while he was handcuffed).

Mr. Stewart also seeks to bring an Eighth Amendment claim against Correctional Officers Kelly, Brooks, Yancik, Griswold, and Moeller. However, Mr. Stewart fails to allege that these officers participated in the assault or had a reasonable opportunity to intervene and prevent it. Therefore, the Court dismisses Count 8 without prejudice as to Officers Kelly, Brooks, Yancik, Griswold, and Moeller, but denies the motion to dismiss Count 8 as to Officers Emmons and Whiteside. *See id.* at 650 (holding that a correctional officer can be liable under the Eighth Amendment for failure to intervene in a beating "if the corrections officer had a reasonable opportunity to intervene and simply refused to do so"); *see also Bistrian v. Levi*, 696

F.3d 352, 371-72 (3d Cir. 2012) (applying *Mensinger* to a failure-to-intervene claim brought by a pretrial detainee).

2.  *Count Nine*

Count 9 of Mr. Stewart's complaint seeks to hold Chester County liable for failing to train or supervise its prison guards. Mr. Stewart alleges that Chester County failed to discipline or train prison guards who committed constitutional violations against inmates, that constitutional violations similar to those he alleges previously occurred at Chester County Prison, and that Chester County's failure to discipline or train its prison guards encouraged those guards to assault Mr. Stewart and deny him medical care. Based on these allegations and its foregoing analysis regarding Count 4 and *Monell* claims, the Court finds that Mr. Stewart has sufficiently alleged that Chester County failed to train its employees and that this failure amounted to deliberate indifference[5] and caused Mr. Stewart's injuries. Therefore, the Court denies the County Defendants' motion to dismiss Count 9.

3.  *Count Ten*

Count 10 alleges that Correctional Officers Emmons and Whiteside committed assault and battery by attacking Mr. Stewart in his prison cell. In Pennsylvania, "assault is defined as an act intended to put another in reasonable apprehension of an immediate battery, which succeeds in causing an apprehension of such a battery." *Brandt v. Borough of Palmyra*, No. 08-677, 2009 U.S. Dist. LEXIS 27160, at *11 (M.D. Pa. Mar. 30, 2009) (citations and quotations omitted). Here, Mr. Stewart fails to allege that the officers' conduct placed him into apprehension of harmful bodily contact. Moreover, because Mr. Stewart was allegedly suffering a "psychotic

---

[5] Although neither Mr. Stewart nor the County Defendants mention *Carter* or its factors, the Court notes that prison guards will have to decide how much force to use against inmates, such a decision involves a difficult choice, and that the wrong choice will often lead to a violation of inmates' Eighth Amendment rights. *See Carter*, 181 F.3d at 357.

13

episode" when Officers Emmons and Whiteside entered his cell, the Court cannot reasonably infer that he was aware of his surroundings or placed into apprehension by the officers' entry. Therefore, the Court dismisses the assault claim against Officers Emmons and Whiteside without prejudice.

As for Mr. Stewart's battery claim, "all he need allege is that [the defendants] intended to inflict bodily harm upon him and that such harm occurred." *Id.* at *14. Because "intent can be inferred from the logical consequences of one's actions," *id.* at *15, Mr. Stewart has adequately stated a claim for battery against Officers Emmons and Whiteside by alleging that they repeatedly struck him, and the Court will not dismiss this claim.

    4.    *Counts Eleven and Fifteen*

Counts 11 and 15 seek to hold all the County Defendants liable for intentional infliction of emotional distress. As stated above, Pennsylvania law grants local agencies immunity from claims for intentional infliction of emotional distress. *See R.B. v. Westmoreland Cnty.*, No. 11-1519, 2012 U.S. Dist. LEXIS 21623, at *20 (W.D. Pa. Feb. 21, 2012). Therefore, the Court dismisses Counts 11 and 15 with prejudice as to Chester County and Chester County Prison.

The Court next considers whether the alleged physical abuse of Mr. Stewart by Officers Emmons and Whiteside gives rise to a plausible claim for intentional infliction of emotional distress. The Court finds that, just as the alleged tasering of Mr. Stewart by Officers Kinch and Armbruster gives rise to a cognizable claim for intentional infliction of emotional distress, the alleged actions of Officers Emmons and Whiteside in beating up (rather than restraining) a man undergoing a psychotic breakdown does the same. The Court will thus deny the motion to dismiss Counts 11 and 15 as to Officers Emmons and Whiteside.[6]

---

[6] While the Court recognizes that the tort of intentional infliction of emotional distress requires a showing of physical harm, *see Reedy*, 615 F.3d at 231, the Court finds that the

14

Additionally, Mr. Stewart alleges in Count 15 that Correctional Officers Kelly, Brooks, Yancik, Griswold, and Moeller are liable for intentional infliction of emotional distress. However, the only fact Mr. Stewart alleges regarding these defendants is that they denied him medical attention even though they knew he was diagnosed as bi-polar and had a history of hospitalization for mental health issues. The Court finds that this alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Reedy*, 615 F.3d at 231-32 (citations and quotations omitted). Therefore, the Court dismisses Count 15 as to Correctional Officers Kelly, Brooks, Yancik, Griswold, and Moeller without prejudice.

5. *Count Twelve*

Count 12 alleges that the individual County Defendants violated Mr. Stewart's constitutional rights by denying him medical care. Because Mr. Stewart's allegations pertain to his time as a pretrial detainee, this claim arises under the Fourteenth Amendment. *See King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). However, Mr. Stewart brings Counts 12 and 13 under the Eighth Amendment. In such a situation, the Third Circuit Court of Appeals has evaluated a Fourteenth Amendment denial-of-care claim under Eighth Amendment case law, and the Court will follow that same approach here. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *see also King*, 302 F. App'x at 96-97.

To succeed on a claim for denial of medical care under the Eighth Amendment, a plaintiff "must demonstrate (1) that the defendants were deliberately indifferent to [the plaintiff's] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d

---

occurrence of such harm can be reasonably inferred from the allegation that Officers Emmons and Whiteside repeatedly struck Mr. Stewart's head and body.

Cir. 1999). Deliberate indifference exists when a "prison official [] knows of a prisoner's need for medical treatment but intentionally refuses to provide it." *Id.* Here, Mr. Stewart alleges that Officers Kelly, Brooks, Yancik, Griswold, and Moeller knew that he was bipolar and had a history of mental health issues, but that they nonetheless deliberately chose to deny him medical treatment. Similarly, Officers Emmons and Whiteside allegedly knew that Mr. Stewart was hearing voices, unable to breath, and suffered a psychotic episode, but responded to these medical problems by assaulting Mr. Stewart and placing him into a general population cell rather than by providing him with medical treatment. In light of these allegations, Mr. Stewart has sufficiently stated a claim for denial of medical care against the individual County Defendants, and the Court will deny those defendants' motion to dismiss Count 12.[7]

6. *Count Thirteen*

In Count 13, Mr. Stewart seeks to hold Chester County liable for denying him medical care. As previously noted, a local government "may only be held liable under [section] 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind [the plaintiff's] injury." *See Jewell*, 2012 U.S. App. LEXIS 19644 at *6. Mr. Stewart's complaint merely alleges that Chester County encouraged its prison guards to exhibit indifference towards *his* specific need for medical attention. *See* Docket No. 1 at ¶ 95. The Court cannot reasonably infer from this allegation whether Chester County had any policy or custom pertaining to the denial of medical care, or whether it failed to train or supervise its prison guards regarding the provision of medical care. Therefore, the Court dismisses Count 13 without prejudice.

---

[7] To the extent that Mr. Stewart argues that the County Defendants are liable for failing to prevent an attempted suicide, the Court notes that prison officials can face liability for failing to prevent a suicide. *See Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). However, Mr. Stewart's complaint does not allege that he even attempted suicide, and he thus cannot litigate Count 12 or Count 13 on this basis.

7. *Count Fourteen*

Count 14 of the complaint seeks to hold the County Defendants liable for "willful misconduct." The Third Circuit Court of Appeals has held that, under Pennsylvania law, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (citations and quotations omitted). Mr. Stewart thus appears to be alleging that the County Defendants are liable for committing some sort of unspecified intentional tort. Such an allegation fails to "give the [County Defendants] fair notice of what the . . . claim [in Count 14] is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations and quotations omitted). Therefore, the Court will dismiss Count 14 without prejudice.

8. *Count Sixteen*

In Count 16 of his complaint, Mr. Stewart alleges that the County Defendants and PrimaCare Defendants conspired to deprive him of his state and federal civil rights. To the extent that Mr. Stewart attempts to plead a conspiracy claim under section 1983, he must "specifically present facts tending to show agreement and concerted action to deprive [him] of his . . . rights." *Walsh v. Quinn*, 327 F. App'x 353, 355 (3d Cir. 2009); *see also Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) ("A plaintiff must make specific factual allegations of combination, agreement, or understanding . . . to carry out the alleged chain of events. . . . [O]nly allegations of conspiracy which are particularized . . . will be deemed sufficient[.]") (citations and quotations omitted). Similarly, to the extent that Mr. Stewart seeks to plead a civil conspiracy claim under Pennsylvania law, he "may not rely on mere conclusory allegations of conspiracy, but instead must make particularized allegations to describe the period of the conspiracy, the object of the conspiracy, and the steps taken in furtherance of the conspiracy." *Mieczkowski v. York City Sch. Dist.*, No. 07-1102, 2009 U.S. Dist. LEXIS 126091,

at *39 (M.D. Pa. Dec. 21, 2009) (citing *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. Ct. 2005)).

Mr. Stewart's complaint fails to specifically plead particularized facts regarding any conspiracy, and instead only offers conclusory assertions that various defendants "conspired among themselves" and acted "in concert." *See* Docket No. 1 at ¶¶ 36, 105. Therefore, the Court will dismiss Count 16 without prejudice as to the County Defendants.

**C.      The PrimaCare Defendants' Motion to Dismiss**

The PrimaCare Defendants have filed a partial motion to dismiss with respect to Count 16 of Mr. Stewart's complaint. As stated above, the complaint omits specific factual averments regarding the alleged conspiracy. Therefore, the Court grants the PrimaCare Defendants' motion without prejudice.

**IV.     Conclusion**

For the foregoing reasons, the Court grants in part and denies in part the Township Defendants' and County Defendants' motions to dismiss, and grants the PrimaCare Defendants' motion to dismiss. Therefore, Mr. Stewart may pursue claims against the following parties based on the allegations in his complaint and the arguments presented heretofore:

- Officers Kinch and Armbruster (with respect to Counts 1-3, 5, and 7).

- East Goshen and Westtown Townships (with respect to Count 4).

- Correctional Officers Emmons and Whiteside (with respect to Counts 8, 10 (for battery only), 11, 12, and 15).

- Chester County and Chester County Prison (with respect to Count 9).

- Correctional Officers Kelly, Brooks, Yancik, Griswold, and Moeller (with respect to Count 12).

- The PrimaCare Defendants (with respect to Count 17).

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge