IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STEWART, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| C.O. EMMONS, et al., | : | |
| Defendants. | : | No. 12-1509 |
| | : | |

MEMORANDUM OPINION

**Timothy R. Rice**  **March 27, 2014**
**U.S. Magistrate Judge**

Plaintiff Robert Stewart was detained pre-trial in the Chester County Prison March 25 - 29, 2010, and alleges that mistreatment by the County, its employees, and its contracted medical providers, led to a fall that resulted in his quadriplegia. Pending before me are four motions: Stewart's petition for leave to file a Second Amended Complaint (doc. 42); motions for partial summary judgment filed by the Chester County defendants (doc. 38) and medical provider defendants (doc. 58); and Stewart's motion to compel discovery (doc. 47).

I grant, in part, Stewart's petition for leave to file a Second Amended Complaint, as explained below. I also deny, without prejudice, defendants' motions for summary judgment. Stewart's motion to compel is dismissed as moot, pursuant to the parties' representations at oral argument that they would agree upon any further discovery once the petition for leave to amend has been decided.

1. FACTUAL AND PROCEDURAL HISTORY

On March 25, 2010, Stewart was arrested by Westtown East Goshen police, charged with, among other offenses, disorderly conduct, and detained pretrial at the Chester County Prison. Amended Complaint ("AC") (doc. 25) at ¶¶ 25-34. At his intake interview, Stewart

provided some information regarding his history of mental illness, which was noted by prison employees and employees of the company contracted to provide medical services to the inmates, PrimeCare Medical, Inc. ("PrimeCare").  Id. at ¶¶ 35-41.  From March 26 through 28, 2010, Stewart was incarcerated first in the prison's general population, and then, after a conflict with corrections officers, put in restraints and moved to the prison's punitive cell block, and finally moved to the medical cell block, still in restraints.  Id. at ¶¶ 42-47.  On March 29, 2010, in the prison's medical cell block, Stewart fell from the top bunk and hit his head on the metal toilet, suffering injuries that have rendered him quadriplegic.  Id. at ¶¶ 47-50.

The original Complaint was filed on March 26, 2012 before United States District Judge Gene E.K. Pratter, and the Amended Complaint was filed in January 2013.  The asserted facts and legal theories have changed over time.  Initially, Stewart claimed he was fleeing an unprovoked attack when he was unlawfully arrested, and he sued the arresting officers for assault and battery as well as their employer, East Goshen Township.  Complaint (doc. 1), Counts IV and V.  Stewart also alleged assault and battery by Chester County corrections officers, suing them and the prison based on claims that he was transferred to the punitive cell block only after officers had entered his cell and, without provocation, assaulted him.  Id., Counts IX and X.  He also brought suit against PrimeCare and its individual employees, alleging negligence in their failure to properly note and address his mental illness.  Id., Count XVI.

After extensive discovery, all claims against the arresting officers and East Goshen Township have been dropped.  See generally, proposed Second Amended Complaint ("SAC"), attached to Plaintiff's petition for leave to amend.  Stewart now seeks to bring claims exclusively under theories of "deliberate indifference" against Chester County prison and its employees, and negligence against PrimeCare and its employees.  Id.  Stewart has abandoned his claims that

corrections officers beat him without provocation.  Instead, he contends that he had a psychotic episode, attacked the officers, and they responded.  Id.  Based on that attack, other behavior he exhibited, and his answers to questions about his medical history, Stewart contends the PrimeCare and Chester County defendants knew he was a potential danger to himself, and that their procedures were inadequate to protect him.  Id.  Stewart now claims that, in a psychotic state, he climbed up on the top bunk of his cell in the medical block, in arm restraints, and attempted suicide by twice throwing himself off the top bunk onto the floor.  Id.  After his second fall, Stewart was moved from his prone position by two corrections officers in the company of a PrimeCare nurse.  He claims this movement contributed to his injuries.  Id.

In August 2013, the Chester County defendants sought partial summary judgment based on the allegations in the Amended Complaint.  In October 2013, Stewart sought leave to file a Second Amended Complaint.  In January 2014, PrimeCare filed a motion for partial summary judgment, also based on the allegations in the January 2013 Amended Complaint.  In February 2014, the parties consented to transfer the case to me.  On March 17, 2014, I heard oral argument on Stewart's petition for leave to amend his complaint.

2. STANDARD OF REVIEW

The parties dispute which standard applies to Stewart's petition.  Stewart cites Federal Rule of Civil Procedure 15, which allows me to "freely" grant leave to amend when it would serve "justice."  Pl.'s Mem. in Support of Pet. for Leave to Am. ("Pl. Br.") (doc. 42) at 8. Defendants argue that, before reaching the Rule 15 analysis, I must first apply the heightened Rule 16(b) standard because granting leave to amend would abrogate the court's prior scheduling order.  PrimeCare's Resp. in Opp. to Pet. for Leave to Am. ("PC Br.") (doc. 44) at 5.

Under Rule 16(b), a party seeking an amendment that requires changing a scheduling

order must demonstrate "good cause" for the delay. <u>E. Minerals & Chems. Co. v. Mahan</u>, 225 F.3d 330, 340 (3d Cir. 2000); <u>accord</u> <u>Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.</u>, 148 F. App'x 82, 85 (3d Cir. 2005) ("good cause" applies to motions to amend pleadings after scheduling order deadlines have passed). Under Rule 15, the party opposing the amendment must show that: 1) it would be prejudiced by the amendment, 2) the party seeking leave has moved with "undue delay," or 3) the proposed amendment would be futile. <u>Jang v. Boston Scientific Scimed, Inc.</u>, 729 F.3d 357, 367 (3d Cir. 2013).

The December 2012 Scheduling Order set a January 11, 2013 deadline for Plaintiff to amend his Complaint. Stewart argues his petition to amend should be considered solely under Rule 15 because he moved to amend before the expiration of the discovery period on October 31, 2013. I disagree. Because a Scheduling Order would have to be revised to grant Stewart leave to amend, his request must first be considered under Rule 16, which requires that he demonstrate "good cause" to modify a scheduling order. Fed. R. Civ. P. 16(b)(4).

3.  DISCUSSION

   Rule 16 "Good Cause"

Discovering new information during the progression of a lawsuit constitutes "good cause" under Rule 16 if the information could not have been known before discovery. <u>Grill v. Aversa</u>, No. 12–120, 2014 WL 198805, at *1 (M.D. Pa. Jan. 15, 2014). The earliest any of the Defendants claim Stewart should have known of the factual basis of his Second Amended Complaint is when discovery was exchanged in early February 2013. Neither party, therefore, disputes Stewart's contention that he had "good cause" to amend his motion after the January 2013 deadline, and I find that he has met his burden under Rule 16. Next, I must consider his request under Rule 15. <u>Perlman v. Universal Restoration Sys., Inc.</u>, No. 09–4215, 2013 WL

4

5278211, at *4 (E.D. Pa. Sept. 19, 2013) (considering, in succession, the requirements of Rules 16 and 15).

    Rule 15 "Undue Delay"

Any "significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." CMR D.N. Corp. v. City of Phila., 703 F.3d 612, 629 (3d Cir. 2013) accord Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984) ("passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."). Stewart's justification for seeking leave to amend in October is relevant because "the question of undue delay requires that we focus on the movant's reasons for not amending sooner." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). Defendants contend Stewart had all the information necessary to draft his Second Amended Complaint in February or, at the latest, May 2013, while Stewart contends that he needed information from depositions and document discovery that did not occur until late September 2013.

There are no allegations that Stewart delayed seeking initial discovery in this case, and because his original theory required seeking discovery from three institutional and multiple individual defendants, I am satisfied that he pursued discovery with due diligence. See, e.g., Karlo v. Pittsburgh Glass Works, LLC, No. 10–1283, 2011 WL 5170445, at *4 (W.D. Pa. Oct. 31, 2011) (finding plaintiff that had waited more than six months before serving initial discovery and submitted proposed amended complaint without moving to amend case management order was not diligent). Defendants contend Stewart should have sought leave to amend his complaint

as soon as the facts underlying each amendment came to light. Multiple or serial amendments, however, are disfavored.[1] Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 74 (3d Cir. 1994) ("three attempts at a proper pleading is enough").

Rule 15 contemplates the amendment of pleadings during and even after trial. Postponing final amendment to the close of discovery allowed Stewart's counsel to ensure his case is based on the most detailed and factually accurate information available. Although Chester County defendants properly note the challenges of defending against a "moving target," Stewart's proposed Second Amended Complaint would consolidate his claims under a single theory of deliberate indifference. It also specifies individual defendants' actions, identified through discovery, that allegedly demonstrated that indifference.

Rule 15 Prejudice

"[T]o demonstrate undue prejudice, the non-moving party 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered . . . had the amendments been timely.'" Grill, 2014 WL 198805, at *4 (citing Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989)). Stewart's proposed claims against Chester County turn on its policies and actions related to Stewart's incarceration from March 26-29, 2010, and thus fulfill the requirements of Rule 15(c)(1)(B) (actions relate back when they arise out of the same "conduct . . . or occurrence"). Moreover, by naming "Unknown Correctional Officers" in his original Complaint, Stewart provided notice to Chester County that it could expect any of its officers that had come into contact with him during his incarceration to be named if they were

---

[1] At argument, Defendants maintained Stewart filed his initial, verified Complaint without sufficient investigation, and should be held to the theories and allegations originally asserted. This argument fails to account for the unique difficulties Stewart faces as a schizophrenic quadriplegic, and the evidence counsel identified in discovery.

implicated in his alleged mistreatment. Chester County cannot now claim unfair surprise or prejudice at Stewart's request to add individual defendants.

Similarly, PrimeCare is not prejudiced. It has failed to identify any unavailable defense, or a discovery request refused by Stewart. Moreover, Stewart does not seek any additional discovery from PrimeCare, so it will not suffer any additional cost or delay.

PrimeCare alleges that it would be prejudiced by having to defend against a vicarious liability claim based on the actions of its former employee, Nurse Lloyd,[2] because she has not cooperated with discovery. Her actions during the course of this litigation, however, do not affect its underlying liability. Moreover, the original Complaint in this matter alleged that Stewart may have attempted suicide, and PrimeCare has been on notice that Stewart was in the care of its employee Nurse Lloyd at that time. PC Br. at 10.

Statute of Limitations

At argument, counsel suggested that the proposed claims related to Stewart's post-fall care are barred by Pennsylvania's two-year statute of limitations because they do not relate back to the original negligence claims. This time period, however, does not begin until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" Sherfey v. Johnson & Johnson, No. 12-4162, 2014 WL 715518, at *12 (E.D. Pa. Jan. 29, 2014) (citing Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)).

All counsel agreed that Stewart was first provided the video of his fall in February 2013. Given his psychological condition, Stewart did not know of the post-fall care at the time it

---

[2] Nurse Lloyd was also referred to as Nurse Boyd in several documents, as well as in oral argument.

7

occurred. Instead, he was put on notice of the alleged injury caused by the post-fall care only when his counsel received video of the event, at which point the two-year statute of limitations on his personal injury action for that care began to accrue. The proposed claims against PrimeCare based on the post-fall care are timely, and Stewart's petition for leave to amend with respect to the claims against PrimeCare is granted.[3]

Rule 15 Futility

Chester County defendants contend the proposed amended claims against the individual defendants should be rejected because they could not withstand a motion to dismiss, and would be futile. Ch. Br. at 7.

To assess futility, I apply the same standard of review as under Rule 12(b)(6). Walton v. Mental Health Assoc., 168 F.3d 661, 665 (3d Cir. 1999). Dismissal of the proposed complaint is appropriate where a plaintiff's plain statement does not contain sufficient facts to show she is entitled to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff must allege a facially plausible claim "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The complaint also must set forth direct or inferential allegations with regard to all the material elements necessary to sustain recovery under some viable legal theory. Twombly, 550 U.S. at 552. Stewart must plead "how, when, and where" each Defendant allegedly violated his constitutional rights. Fowler v. UPMC Shadyside, 578 F.3d 203, 212 (3d Cir. 2009).

I must "accept all factual allegations as true, construe the complaint in the light most

---

[3] Because PrimeCare has made no argument that the proposed claims against them are futile, I need not address that contention.

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009). I need not, however, credit a plaintiff's legal conclusions or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

The new claims against the individual Chester County defendants are brought under 42 U.S.C. § 1983 based on Fourteenth Amendment protections against "deliberate indifference." SAC, at ¶¶ 52-105. "Deliberate indifference" is "more than simple negligence," and well-pled claims alleging deliberate indifference on the basis of a municipality's failure to prevent the suicide of incarcerated individuals can proceed. Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991); Owens v. City of Phila., 6 F. Supp. 2d 37, 380 (E.D. Pa. 1998).

      i.     Municipal Liability

At oral argument, counsel for Chester County defendants conceded that the County itself does not oppose allowing the amended claims against it to go forward.[4] Stewart, therefore, is granted leave to include Counts I and VIII of the proposed Second Amended Complaint against Chester County.

---

[4] Despite claiming that it did not contest the amended claims against Chester County, it nonetheless cited Spruill v. Gillis, 328 F. App'x 797 (3d Cir. 2009), for the proposition that, as a matter of law, there can be no "deliberate indifference" when a prisoner is referred for medical care. Spruill, however, is an Eighth Amendment case addressing the alleged denial of medical care, not the failure to prevent suicide. Moreover, Spruill does not hold that any referral for medical care excludes the possibility of finding deliberate indifference. It holds only that a claim for deliberate indifference based on denial of medical care cannot be successful when the "record clearly indicates both that [Defendants] treated [Plaintiff's] condition and that their treatment had a medical basis." Id. at 802. Spruill's case was addressed twice by the Third Circuit, and while he lost at summary judgment, his legal theory was upheld in the face of defendants' motion to dismiss. 372 F.3d 218, 237-38 (3d Cir. 2004).

      ii.      <u>Corrections Officers Wideman and McCormack</u>

Count VI of the proposed Second Amended Complaint would add Wideman and McCormack as defendants. SAC, at ¶¶ 86-93. Stewart alleges that Wideman and McCormack were working the midnight to 8 a.m. shift on March 29, 2010 (<u>id.</u> ¶ 88), knew that Stewart was in the medical block because of suicidal ideation, and that he was supposed to be observed on camera and in person every 15 minutes because of his mental health issues (<u>id.</u> ¶ 89). Stewart claims they deliberately failed to undertake the required observations, and intentionally misrepresented their work in the Mental Health Log (<u>id.</u> ¶¶ 90-91).

As government employees, Wideman and McCormack are entitled to immunity from civil suits as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Prisoners' rights to medical attention and reasonable protections against suicide are well-established and should be known by a reasonable person. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) (right to medical attention); <u>Colburn</u>, 94 F.2d 1017 (right to reasonable protections against suicide).

To state a claim based on failure to provide medical attention, a prisoner must allege conduct that evidences "deliberate indifference" to a "serious medical need." <u>Consonery v. Pelzer</u>, No. 13–1738, 2014 WL 892896, at *3 n.3 (3d Cir. March 7, 2014) (citing <u>Estelle</u>, 429 U.S. at 106). "A prison official is not deliberately indifferent unless he '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" <u>Velasquez v. Hayman</u>, No. 12–4526, 2013 WL 6085233, at *1 (3d Cir. Nov. 20, 2013) (citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir.

10

1999)).

To succeed on a claim based on a suicide attempt while incarcerated, Stewart must show: (1) he had a "particular vulnerability" to suicide; (2) defendants knew or should have known of his vulnerability; and (3) defendants acted with "reckless indifference" with respect to his vulnerability. Baez v. Lancaster Cnty., 487 F. App'x 30, 31 (3d Cir. 2012) (citing Colburn, 946 F.2d at 1023). A defendant must either know of a prisoner's risk of suicide, or merely be on notice of the risk because it is "sufficiently apparent that the lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." Colburn, 946 F.2d at 1025.

The claims against Wideman and McCormack, if proven, would meet these standards. Stewart alleges that Wideman and McCormack knew about his suicidal ideation, and knew that close observation of him had been ordered because of it. Thus, when they intentionally failed to fulfill their professional obligations, they did so despite knowing that their failures left Stewart at an increased risk of suicide. "A mental illness may constitute a serious medical need." Dominguez v. Rendell, No. 1:13-2842, 2014 WL 356511, at *8 (M.D. Pa. Jan. 31, 2014) (citing Inmates of the Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979)). Assuming the truth of Stewart's allegations, he has stated a claim against Wideman and McCormack.

At oral argument, Chester County objected to adding individual defendants because the two-year statute of limitations on the § 1983 claims expired in 2012 and Stewart has produced no evidence that the proposed additional individual defendants had notice of the original complaint within 120 days of its filing. Fed. R. Civ. P. 15(c)(1)(C); Hiscock v. City of Phila., No. 12-2204, 2013 WL 686350, at *3 (E.D. Pa. Feb. 26, 2013); Anderson v. Doe I, No. 11-6267, 2012 WL 6645536, at *5 (E.D. Pa. Dec. 20, 2012) (denying leave to amend and identify John Doe

defendants after statute of limitations had expired and more than 120 days elapsed after original complaint was filed).

Personal injury actions brought under § 1983 are subject to Pennsylvania's two-year statute of limitations, and Stewart's time limit expired shortly after he filed suit. Board of Regents v. Tomanio, 446 U.S. 478, 485 (1980). Pennsylvania law regarding tolling also applies, as long as it does not conflict with federal policy. Id. A defendant cannot rely on a statute of limitations when he has fraudulently concealed the cause of a plaintiff's injury. In re TMI, 89 F.3d 1106, 1117-18 (3d Cir. 1996) (quoting Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991)). Once a plaintiff has demonstrated a fraudulent concealment, the statute of limitations is tolled until the plaintiff "knew or using reasonable diligence should have known of the claim." Vernau v. Vic's Market, Inc., 896 F.2d 43, 45 (3d Cir. 1990) (quoting Urland v. Merrell-Dow Pharmaceuticals, Inc., 822 F.2d 1268, 1272 (3d Cir. 1987)).

In Count VI, Stewart alleges that Wideman and McCormack intentionally misrepresented their observations. SAC, at ¶ 91. At oral argument, counsel contended that this concealment was not revealed until the logs, turned over in June or July 2013, were compared with the full videotape of Stewart's stay on the medical block. As part of his § 1983 claims against Wideman and McCormack, Stewart also has alleged fraudulent concealment that would toll the statute of limitations against them. These facts support the timeliness of the proposed claim against them.

   iii. <u>Sergeant Moeller</u>

Count III of the proposed Second Amended Complaint alleges that Moeller was supervising the prison's punitive unit during the 4 p.m. to midnight shift on March 28, 2010. SAC, at ¶ 64. Stewart alleges that Moeller came to the general population at approximately 6 p.m. on March 28 and helped two correctional officers that Stewart had attacked place Stewart in

restraints and bring him to the prison's punitive unit. Id. at ¶ 65. About two hours later, Moeller was summoned by two other correctional officers to observe Stewart because those officers believed he was manifesting suicidal ideation. Id. at ¶ 66. Stewart alleges that Moeller "confirmed this opinion by separately observing Stewart." Id. Moeller then arranged for Stewart's transfer to the medical unit. Id.

Stewart alleges that Moeller, along with Nurse Boyd, "decided to place Stewart, while still in restraints, in cell C-4 which contained bunk beds and had no suicide precaution arrangements." Id. at ¶ 67. Stewart then alleges that Moeller observed Boyd putting Stewart under mental health observation, but failed to designate him a suicide risk. Id. Moeller also allegedly "ignored the need to have Stewart placed on a suicide watch . . . [and] the need to have Stewart's mental health observation log contain a note that Stewart was at risk for suicide." Id. at ¶ 68. At midnight, Stewart alleges Moeller "ignored the requirement to acquaint [the medical block supervisor coming on shift] with the status of Stewart in the Medical Unit" and "ignored the requirement of advising [the medical block supervisor coming on shift] of the manner in which Stewart was being treated and observed." Id. at ¶ 69.

Whether Moeller's alleged behavior constitutes deliberate indifference turns on whether failing to put a prisoner with suicidal ideation on suicide watch creates a risk of substantial harm to him that is so obvious Moeller can be found to have known it based on circumstantial evidence.[5] Mitchell v. Gershen, 466 F. App'x 84, 87 (3d Cir. 2011) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001)); see also Clark-Murphy v. Foreback, 439 F.3d 280,

---

[5] Chester County contends that "suicide watch" consists of the same observation level – every 15 minutes – that Stewart received, thus rendering Stewart's claims against Moeller futile. This argument is premature, as I must now construe the facts in favor of Stewart. Johnson v. Predator Trucking, LLC, No. 1:13-1683, 2014 WL 582279, at *3 (M.D. Pa. Feb. 14, 2014) (assessing futility by viewing facts in the "light most favorable to plaintiff").

288, 290 (6th Cir. 2006) (allowing denial of medical care deliberate indifference claim to go forward against several defendants, including a prison official who filled out the requisite form requesting psychological care and "left it at that."). Because a reasonable jury could find that failing to ensure Stewart was provided protections against suicide constituted deliberate indifference, the proposed claim is not futile.

The proposed claim against Moeller also is timely. Moeller was a named individual defendant in the original Complaint and first Amended Complaint. Compl., at Counts VIII, XII, XIV, XV, and XVI; AC, at Counts VIII, XII, and XV. Thus, the claim against him will relate back to the date of the previously filed pleading as long as the amended claim "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Count XII of the original Complaint alleged Moeller violated the Eighth Amendment by denying Stewart medical care and failing to provide him adequate suicide protections, and Count XII of the Amended Complaint made the same allegations, citing the Eighth and Fourteenth Amendments. Compl., at Count XII; AC, at Count XII. The proposed claim against Moeller in the Second Amended Complaint, although now based solely on the Fourteenth Amendment, was thus included in Count XII of the previous Complaints. Id. Although the factual allegations in the previous complaints were less specific than those in the proposed Second Amended Complaint, they clearly arise out of the same "conduct . . . or occurrence" and therefore relate back to the date of the original filing which was within the statute of limitations. Fed. R. Civ. P. 15(c)(1)(B).

Plaintiff's petition for leave to amend is therefore granted as to Count III against Moeller.

   iv.   <u>Correctional Officer Owundinju</u>

Count VII of the proposed Second Amended Complaint would add Owundinju as a

defendant. SAC, at ¶¶ 94-97. The only factual allegations against Owundinju, however, are that he helped prop Stewart up against the wall after his fall. Id. at ¶ 96. Owundinju was in the presence of Nurse Lloyd when this took place. Id. Stewart alleges only that Owundinju was deliberately indifferent to his need for medical attention, not suicide precautions. Id. at ¶ 97.

In the case of failure to provide medical care, the prisoner must adequately allege "deliberate indifference" to "serious" medical needs, and allegations of "inadvertent failure to provide adequate medical care," "simply fail to establish the requisite culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (citing Estelle, 429 U.S. at 105-06). "[T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." Colburn, 946 F.2d at 1023.

Although potentially negligent, moving an individual with a potential neck and/or back injury to a seemingly more comfortable position fails to demonstrate deliberate indifference to a prisoner's need for medical attention, particularly when that action is undertaken in the presence of medical personnel. There are no allegations that raise Owundinju's alleged actions to the level of "deliberate indifference." Velasquez, 2013 WL 6085233, at *1. Amending to add Count VII would be futile. Therefore, Stewart's petition for leave to amend and add Owundinju as a defendant is denied.

      v.    Deputy Warden Phillips

Count II of the proposed Second Amended Complaint would add Deputy Warden Phillips as a defendant. Stewart alleges that Phillips, who was in charge of inmate treatment at the prison (¶ 58), met with Karen Murphy, a PrimeCare supervisor, on March 26, 2010, and was made aware of Stewart's need for a mental health evaluation, but "took no action to have these evaluations initiated in a timely and appropriate manner." SAC, at ¶ 59. Instead, Phillips

"allowed Stewart to be placed in the general prison population." Id. at ¶ 60. There are no allegations that, at the time of Phillips' meeting on March 26, any defendants knew that Stewart was a suicide risk.

At oral argument, Stewart's counsel claimed his expert will testify that Phillips had enough information on March 26 that he should have referred Stewart for hospitalization. The standard for deliberate indifference, however, is not whether Phillips should have acted differently. There is no § 1983 liability for "negligent failure to protect a detainee from a self-inflicted injury." Colburn, 94 F.2d at 1024. Rather, to demonstrate indifference to a serious medical need, Stewart must show that Phillips: (1) knew of Stewart's need for a medical evaluation but "intentionally refuse[d] to provide it;" (2) delayed the evaluation "based on a non-medical reason;" or (3) "prevent[ed]" Stewart from receiving the evaluation. Velasquez, 2013 WL 6085233, at *1. Even crediting each of the allegations in Count II, Stewart alleges mere inaction by Phillips, not the requisite intentional conduct. Id. Because including these claims would be futile, Plaintiff's petition for leave to include Count II and add Phillips as a defendant is denied.

      vi.     Sergeant Swain[6]

Count V of the proposed Second Amended Complaint would bring suit against Sergeant Swain because he: (1) "deliberately failed to supervise" Wideman and McCormack, the personnel in the medical block who allegedly failed to check on Stewart every 15 minutes as required; and (2) with the help of another officer, propped Stewart up against the wall after his fall. SAC, at ¶¶ 83-84. Like the proposed claim against Owundinju, the claim against Swain for helping to prop Stewart up against the wall fails to allege "deliberate indifference." Velasquez,

---

[6]     Sergeant Swain is sometimes referred to as Sergeant McSwain.

16

2013 WL 6085233, at *1.

There are two ways to establish supervisor liability under § 1983: by showing a supervisor: (1) is responsible for making and maintaining the specific policies (or lack thereof) that violated the constitutional right; or (2) "had knowledge of and acquiesced in his subordinates'" constitutional violations. A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 32 F.3d 572, 587 (3d Cir. 2004).

Stewart's claim against Swain based on an allegedly deliberate failure to supervise fails to satisfy § 1983 because it does not aver that Swain was a policymaker, and specifically acknowledges that Swain lacked knowledge of the alleged constitutional violations that could otherwise establish his personal liability under § 1983.[7] A.M., 50 F.3d at 1190-91. Because including Count V in his proposed Second Amended Complaint would be futile, Plaintiff is denied leave to include Count V against Swain.

      vii.    Lieutenant Brooks

In Count IV of the proposed Second Amended Complaint, Stewart alleges that Brooks was "[r]esponsible for overseeing all security activities within the Prison" from approximately 11 p.m. on Sunday March 28 through 8 a.m. the following morning. SAC, at ¶ 73. Stewart alleges that, when Brooks started his shift, he was told that Stewart had been transferred to the medical unit "because of Moeller's opinion that Stewart was manifesting suicidal ideation." Id. at ¶ 74. Stewart further alleges that Brooks did not, throughout his shift, communicate with medical or security personnel about Stewart's condition, "result[ing] in a deliberate failure to obtain knowledge of the deteriorating mental health status of Stewart and his increasing suicidal risk."

---

[7] Stewart has failed to allege that any supervisory prison officials personally participated in the alleged constitutional violations or directed employees to violate Stewart's constitutional rights.

Case 2:12-cv-01509-TR   Document 67   Filed 03/27/14   Page 18 of 18

Id. at ¶ 75. At oral argument, counsel represented that Brooks was the Chester County prison employee who supervised the PrimeCare employee responsible for putting the information about Stewart's suicidal ideation into the transfer documentation. This fact, however, was not alleged in the Second Amended Complaint.

The proposed allegations against Brooks are insufficient to overcome his qualified immunity. Because Stewart does not aver that Brooks was a policymaker at the prison, and specifically alleges Brooks lacked knowledge of Stewart's "deteriorating" mental status, he undercuts his ability to overcome Brooks' immunity and impose supervisor liability under § 1983. A.M., 50 F.3d at 1190-91. The proposed claim against Brooks is futile and Stewart is denied leave to include Count IV in his Second Amended Complaint.

An appropriate Order follows.

18